# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TATE PROWS,
      Plaintiff,

    v.

CITY OF OXFORD, *et al.*,
      Defendants.

Case No. 1:22-cv-693
Cole, J.
Litkovitz, M.J.

**ORDER AND REPORT AND
RECOMMENDATION**

On November 28, 2022, plaintiff initiated this civil rights action against the City of

Oxford, Ohio (the "City"), its chief of police John Jones ("Chief Jones"), its mayor Michael

Smith ("Mayor Smith"), its vice-mayor William Snavely ("Vice-Mayor Snavely"), its manager

Doug Elliott ("Manager Elliott"), and all five of its councilors: Chantel Raghu ("Councilor

Raghu"), Jason Bracken ("Councilor Bracken"), Glenn Ellerbe ("Councilor Ellerbe"), David

Prytherch ("Councilor Prytherch"), and Edna Southard ("Councilor Southard") (collectively,

"defendants"). This matter is before the Court on defendants' motion for judgment on the

pleadings (Doc. 20), plaintiff's objection (Doc. 33), and defendants' reply (Doc. 48). Plaintiff

also filed a motion to convert defendant's motion into a motion for summary judgment, which is

fully briefed. (*See* Docs. 27, 29, and 32).

## I.    Background[1]

The crux of this lawsuit is the City's Ordinance No. 3579: "An Ordinance Prohibiting

Mass Gatherings of More Than Ten (10) Non-Household Members Within the City of Oxford,

Ohio, to Limit the Spread of Covid-19, and Declaring an Emergency." (*See* Doc. 1-2 at

---

[1] "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). *See Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 695 (6th Cir. 2018) (Rule 12(c)).

PAGEID 29-33) (the "mass-gatherings ordinance").[2]  Plaintiff alleges that City councillors debated what would become the mass-gatherings ordinance in August 2020.  (Doc. 7, PAGEID 131 at ¶ 1).  City council unanimously passed the mass-gatherings ordinance on August 18, 2020.  (*Id.*, PAGEID 134 at ¶ 13; Doc. 1-2 at PAGEID 33).

Precipitated by, *inter alia*, the Covid-19 pandemic and state of emergency declared by Ohio Governor Mike DeWine (*see* Doc. 1-2 at PAGEID 29-31), the mass-gatherings ordinance stated in part as follows:

**Section 1.**    All individuals within the City of Oxford are prohibited from hosting, maintaining or participating in mass gatherings in accordance with the following:

a. "Mass gatherings" for purposes of this Ordinance, means any social gathering, event or convening that brings together greater than ten (10) non-household persons at the same time, to include both indoor and outdoor gatherings.

b. "Non-household" for purposes of this Ordinance, means any individuals who do not reside within the same housing unit or dwelling.

**Section 2.**  The mandatory prohibition on mass gatherings through this Ordinance does not apply in the following situations:

a. Normal operations at bus stops or hubs, medical facilities, libraries, shopping malls and centers, or other spaces where more than ten (10) persons may be in transit.

b. Typical office environments.

c. Schools and University classes or officially sanctioned functions.

d. Factories, warehouses and distribution centers.

---

[2] This document is not attached to plaintiff's amended complaint.  (Doc. 7).  It is included, however, as exhibit "A" to plaintiff's original complaint, which included exhibits designated "A" through "C."  (*See* Doc. 1-2).  Plaintiff's amended complaint picks up with exhibits designated "D" and "E."  (*See* Doc. 7-1).  Based on this and plaintiff's references to the mass-gatherings ordinance throughout his amended complaint, the Court understands plaintiff to have intended that exhibits designated "A" through "E" all be attached to his amended complaint.

e. Retail, grocery stores, restaurants and bars where large numbers of people are present, but it is unusual for them to be within arm's length of one another.

f. Athletic and sporting events, including recreational and club sports.

g. Notwithstanding this Ordinance, buildings and venues that traditionally host mass gatherings, whether indoors or outdoors, may continue to be used for sanctioned community events.

h. This Ordinance does not apply to and/or excludes members of the media.

i. This Ordinance does not apply to and/or excludes religious gatherings, gatherings for the purpose of the expression of First Amendment protected speech, weddings and funerals.

(*Id.* at PAGEID 31-32).  Violators of the ordinance were subject to civil penalties of $500.00 for the first violation and $1,000 for each violation thereafter.  (*Id.* at PAGEID 32).  The mass-gatherings ordinance was effective only, by its terms, "during the pendency of State of Ohio Executive Order 2020-01D[,]" which ended on June 18, 2021.[3]  (*Id.* at PAGEID 33).

Plaintiff's complaint includes allegations of specific conduct by certain defendants. Chief Jones, Manager Elliott, and Councilor Prytherch expressed some hesitation about/disapproval of the mass-gatherings ordinance during August 4 and 18, 2020 City council meetings.  (*See* Doc. 7, PAGEID 132 at ¶¶ 3-8; PAGEID 134 at ¶ 13; PAGEID 136 at ¶ 21; and PAGEID 149 at ¶ 67).  Chief Jones enforced the mass-gatherings ordinance.  (*See* Doc. 7, PAGEID 132, ¶ 6).  Vice-Mayor Snavely stated that the mass-gatherings ordinance should have

---

[3] Governor DeWine rescinded  Executive Order 2020-01D via Executive Order 2021-08D.  *See* Executive Order 2021-08D (Rescinding Executive Order 2020-01D and Ending the Declared State of Emergency), Mike DeWine, Governor of Ohio (June 18, 2021), https://governor.ohio.gov/media/executive-orders/Executive-Order-2021-08D [https://perma.cc/Y9BD-5XWZ]**.**  Under Fed. R. Evid. 201(b)(2), the Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, such as a government website.  *See Broom v. Shoop*, 963 F.3d 500, 509 (6th Cir. 2020) (citing *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017), favorably for the proposition that it is appropriate to take judicial notice of a government website); *Demis v. Sniezek*, 558 F.3d 508, 513 & n.2 (6th Cir. 2009) (taking judicial notice of information on the Bureau of Prisons website).

contained steeper fines during an interview with CNN after the mass-gatherings ordinance passed.  (*Id.*, PAGEID 134 at ¶ 15; PAGEID 147-48 at ¶ 60).  Councilor Bracken advocated for steeper fines prior to the mass-gatherings ordinance's passage.  (*Id.*, PAGEID 133 at ¶ 10; PAGEID 149 at ¶ 66).  Councilor Southard also advocated for associated punishments that "carried some weight" prior to the mass-gatherings ordinance's passage.  (*Id.*, PAGEID 131 at ¶ 2).  Councilor Raghu inquired whether an exemption for extended families could be included prior to the mass-gatherings ordinance's passage.  (*Id.*, PAGEID 143 at ¶ 42).  Plaintiff's amended complaint does not reference any specific conduct by Mayor Smith or Councilor Ellerbe.

Against the five City Councillors collectively, plaintiff alleges that they "h[e]ld the false belief that their ordinances carry the same weight as laws" (*id.*, PAGEID 133 at ¶ 9) and voted to pass the mass-gatherings ordinance despite concerns raised by Chief Jones (*id.*; *id.*, PAGEID 149 at ¶ 68).  Plaintiff also generally alleges that the conduct of all defendants was wanton or reckless.  (*Id.*, PAGEID 125-26 and 130; PAGEID 150 at ¶ 72).

Plaintiff does *not* allege that the mass-gatherings ordinance was enforced (or threatened to be enforced) against him.  Plaintiff alleges that he "was chilled and deterred from exercising his First Amendment right."  (*Id.*, PAGEID 135 at ¶ 16).  Plaintiff further alleges that he was unable to gather with his larger family during the "Holiday Season of 2020, due to fear of having armed police officers show up to his door, without a warrant" to enforce the mass-gatherings ordinance.  (*Id.*).  Plaintiff alleges that this resulted in "severe emotional trauma and anxiety which manifest itself in numerous physical symptomologies."  (*Id.*).

Counts I through III of plaintiff's amended complaint allege violations of plaintiff's First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Fourteenth Amendment rights.  Count IV

alleges conspiracy under 42 U.S.C. § 1985(3).  Count V alleges a general civil conspiracy claim. Plaintiff withdrew his negligent infliction of emotional distress claim.  (Doc. 33 at PAGEID 375).   Plaintiff seeks relief including his "right to reasonable attorney's fees" pursuant to the "common law Writ of Qui Tam" (*id.*, PAGEID 146 at ¶ 55); the impaneling of a federal grand jury (*id.*, PAGEID 151-52 at ¶¶ 79-80); compensatory damages; attorney fees pursuant to 42 U.S.C. § 1988; and punitive damages from the individual defendants.[4]

## II.     Standard of Review

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).  However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* at 581-82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).  Put differently, defendants are entitled to judgment under Rule 12(c) if "no material issue of fact exists and [they are] entitled to judgment as a matter of law." *Id.* at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

To withstand a Rule 12(c) motion for judgment on the pleadings, like a Rule 12(b)(6) motion, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citation omitted).  "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the

---

[4] Plaintiff withdrew his request for injunctive relief and acknowledges that he cannot seek punitive damages from the City.  (Doc. 33 at PAGEID 375).

plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than

merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A "legal conclusion couched as a factual

allegation" need not be accepted as true; and "a formulaic recitation of the elements of a cause of

action" is insufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A complaint filed by a pro se plaintiff must be "liberally construed" and "held to less

stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89,

94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). By the same

token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face'" to withstand a Rule 12(c) motion. *Iqbal*, 556 U.S.

at 678 (quoting *Twombly*, 550 U.S. at 570).

## III.  Analysis

### A.  Standing

It is plaintiff's burden to establish Article III standing—i.e., that there is a case or

controversy appropriate for judicial disposition under the Constitution. *See* U.S. Const. art. III,

§ 2; *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016) ("Plaintiffs bear the

burden of establishing standing."). To do so, plaintiff must show:

> "(1) [he] has suffered an 'injury-in-fact' that is (a) concrete and particularized and
> (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly
> traceable to the challenged action of the defendant; and (3) it is likely, as opposed
> to merely speculative, that the injury will be redressed by a favorable decision."

*Id.* (quoting *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606-07 (6th Cir. 2007))

(alteration in original). The Supreme Court has "consistently held that a plaintiff raising only a

generally available grievance about government—claiming only harm to his and every citizen's

interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992)).

In addition to Article III standing, the Court considers prudential standing. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007). This inquiry is aimed at precluding access to federal courts over "a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens" or in situations where the plaintiff "rest[s] his claim to relief on the legal rights or interests of third parties." *Id.* at 349 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). For prudential standing, plaintiff must show that (1) he seeks to redress his own injuries and not those of third parties, (2) his claim is "more than a generalized grievance[,]" and (3) his complaint "fall[s] within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011) (quoting *City of Cleveland v. Ohio*, 508 F.3d 827, 835 (6th Cir. 2007), and *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982)) (internal quotation omitted).

Plaintiff's amended complaint alleges a generalized grievance with the City common to all City residents. (*See, e.g.*, Doc. 7, PAGEID 135 at ¶ 16 ("[Plaintiff], along with every other U.S. citizen residing within the territorial jurisdiction of the City . . . , was chilled and deterred from exercising his First Amendment right."); PAGEID 150 at ¶ 72 ("Defendants breached their duty to all citizens under their protection by wantonly and recklessly violating the citizens' inalienable rights. . . .")). This is insufficient to establish injury in fact for standing purposes. *See Lance*, 549 U.S. at 439. *See also Marcum v. Jones*, No. 1:06-cv-108, 2006 WL 543714, at

*1 (S.D. Ohio Mar. 3, 2006) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others.") (citing 28 U.S.C. § 1654); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (Prisoner "lack[ed] standing to assert the constitutional rights of other prisoners.") (quoting *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989)).

As to plaintiff personally, he alleges that he refrained from gathering with his family "during the Holiday Season of 2020[] due to fear of having armed police officers show up to his door, without a warrant" to assess a fine pursuant to the mass-gathering ordinance.  (Doc. 7, PAGEID 135 at ¶ 16).  Relatedly, plaintiff alleges that the City had enforced the mass-gatherings ordinances and assessed fines for first-time infractions.  (*Id.*, PAGEID 134 at ¶ 14; Doc. 1-2 at PAGEID 35-57 (City Civil Offense Citations)).  As a result, plaintiff alleges that he suffered "severe emotional trauma and anxiety which manifested itself in numerous physical symptomologies."  (*Id.*, PAGEID 135 at ¶ 16)

The Court finds that this allegation is sufficient for purposes of the standing inquiry.[5] The injury in fact component of the standing analysis is satisfied "when the threat of enforcement of that law is 'sufficiently imminent.'"  *Miller v. City of Wickliffe, Ohio*, 852 F.3d 497, 506 (6th Cir. 2017) (quoting *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 451 (6th Cir. 2014)).  "Sufficiently imminent," in turn, is determined by reference to whether "(1) the plaintiff alleges 'an intention to engage in a course of conduct' implicating the Constitution and (2) the threat of enforcement of the challenged law against the plaintiff is 'credible.'"  *Id.* (quoting *Platt*, 769 F.3d at 451-52 (quoting *Babbitt v. United Farm*

---

[5] The standing analysis should not preempt the merits analysis.  *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864 n.3 (6th Cir. 2020) ("We are mindful of the Supreme Court's admonition that we must keep the merits of [the plaintiff's] claim separate from the standing question.") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96 (1998)).

*Workers Nat'l Union*, 442 U.S. 289, 298 (1979))).  Plaintiff alleges that, while the mass-gatherings ordinance was in effect, he intended to gather with his extended family, which includes more than 10 people, meeting the first requirement.  As to the second requirement, a threat is credible "if a person must censor herself to avoid violating the law in question."  *Id.* (citing *Platt*, 769 F.3d at 452).  Such censorship arises where the law at issue "amount[s] to an outright prohibition on certain types of speech in which a Plaintiff had demonstrated an intent to engage."  *Thiede v. Burcroff*, No. 16-13650, 2018 WL 465968, at *14 (E.D. Mich. Jan. 18, 2018).  *See also Platt*, 769 F.3d at 452 (injury in fact established where the plaintiff alleged a "desire[] to engage in political speech . . . that violate[d] the [law at issue]").  Based on the foregoing, the alleged injury resulting from plaintiff's reasonable belief that he could not gather with his family during the 2020 holiday season is sufficient to confer standing.  *Cf. Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).

     B.  <u>Immunity</u>

       1.  *Absolute immunity*

Defendants argue that the individual defendants are entitled to absolute immunity for their legislative activity.  It appears to the Court, however, that only Councilors Prytherch, Southard, Bracken, Ellerbe, Rahu; Vice-Maylor Snavely; and Mayor Smith voted to pass the mass-gatherings ordinance.  (*See* Doc. 7-1 at PAGEID 179 (August 18, 2020 City council meeting minutes)).  Chief Jones and Manager Elliott are therefore not candidates for such immunity.

Plaintiff distinguishes the cases defendants cite from the situation at bar, where he alleges that the legislative activity was "outside the scope of [defendants'] legislative authority. . . ." (Doc. 33 at PAGEID 372; *id.* at PAGEID 358-60 (discussing the scope of the City's legislative power under Ohio's Constitution)).  In reply, defendants argue that the mass-gatherings ordinance was within the City's legislative powers under Ohio's Constitution as interpreted by the Ohio Supreme Court.

"Local legislators sued in their individual capacities may invoke absolute legislative immunity to insulate themselves from liability for certain actions."  *Vaduva v. City of Xenia*, 780 F. App'x 331, 335 (6th Cir. 2019) (citing *Smith*, 641 F.3d at 218).  This immunity exists to promote public service without fear of civil liability, given that local government positions often feature little "prestige [or] pecuniary rewards. . . ."  *Smith*, 641 F.3d at 219.  "[P]assing an ordinance is a 'purely legislative act.'"  *Vaduva*, 780 F. App'x at 335 (quoting *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 437 (6th Cir. 2005)) (remaining citations omitted).

The Sixth Circuit in *Vaduva* considered and rejected an argument that appears analogous to the one plaintiff makes here:

> Plaintiff argues that City Council Defendants are not entitled to legislative immunity because passing an *unconstitutional* ordinance is not within the sphere of legitimate legislative activity, and that the district court erred by "focus[ing] on the nature of the act [rather than] the unconstitutionality of the ordinance." (Reply Brief for Appellant at 12.)  Yet, to the contrary, "whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."  *Canary v. Osborn*, 211 F.3d 324, 329 (6th Cir. 2000) (quotation omitted); *see also Collins v. Vill. of New Vienna*, 75 F. App'x 486, 488 (6th Cir. 2003) (per curiam).  Thus, the constitutionality of [the ordinance at issue] is not relevant to this legislative immunity analysis.  *See, e.g., Smith*, 641 F.3d at 218 ("Even if the Board did not have the power to abolish the alternative school under Tennessee law, the Board members may still enjoy legislative immunity as individuals in federal court for their legislative actions, sound or unsound."); [*Shoultes v Laidlaw*, 886 F.2d 114, 117-18 (6th Cir. 1989)] ("While the ordinance subsequently was held invalid, it was passed by a properly constituted legislative body, which was empowered to pass zoning regulations.

Accordingly, we hold that the Mayor and Council members are shielded from suit by absolute legislative immunity.").

*Id.* at 335-36 (footnote omitted). *See also Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 367 (6th Cir. 2022) ("The Caucus's decision to oust Kent remained discretionary [as opposed to ministerial] . . . , even if it allegedly violated state law" and was shielded by legislative immunity). Legislative immunity depends on the nature of the challenged act and not its legality of the motives of the actors, and the action of these defendants—voting to pass the mass-gatherings ordinance—was clearly legislative in nature. *See Vaduva*, 780 F. App'x at 335-36. Plaintiff's claims, including his conspiracy claims, should therefore be dismissed against Councilors Prytherch, Southard, Bracken, Ellerbe, Rahu; Vice-Maylor Snavely; and Mayor Smith on the basis of absolute immunity. *See also id.* at 336 n.5 ("[L]egislative immunity analysis applies equally to Plaintiff's § 1983 and § 1985(3) claims.").

### 2. *Qualified immunity*

Given the above, the Court considers whether the remaining individual defendants, Chief Jones and Manager Elliott, are protected by qualified immunity. "Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (2006)). Thus, when a defendant raises qualified immunity, the plaintiff must show that (1) "a constitutional violation has occurred" and (2) "the violation involved a clearly established constitutional right of which a reasonable person would have known." *Id.* (citing *Sample v. Bailey*, 409 F.3d 689, 695-96 (6th Cir. 2005)). The Court may consider these elements in any order. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "[T]o impose individual liability upon a [state official] for engaging in unconstitutional misconduct, it

is a plaintiff's burden to specifically link the [official]'s involvement to the constitutional infirmity. . . ." *Burley v. Gagacki*, 834 F.3d 606, 615 (6th Cir. 2016). *See also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983.").

Qualified immunity, a fact-sensitive analysis, is generally inappropriate at the pleading stage. *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020). But this is not an absolute rule. *Id.* "If, taking all the facts as true and reading all inferences in the plaintiff's favor, the plaintiff has not plausibly showed a violation of his clearly established rights, then the officer-defendant is entitled to immunity from suit" at the pleading stage. *Id.* at 762.

As discussed above, plaintiff does not allege that Chief Jones or Manager Elliott voted to pass the mass-gatherings ordinance. In fact, plaintiff alleges that these two defendants expressed hesitation about the mass-gatherings ordinance. *See supra* p. 3. Plaintiff also does not allege that Chief Jones or Manager Elliot enforced the mass-gatherings ordinance against him personally. (*See* Doc. 7, PAGEID 132, ¶ 6 (Chief Jones "and his officers enforced [the mass-gatherings ordinance]"). Chief Jones and Manager Elliott therefore cannot be held individually liable for any unconstitutional conduct and are entitled to qualified immunity. *Burley*, 834 F.3d at 615 (6th Cir. 2016); *Gilmore*, 92 F. App'x at 190.

### 3. *State law immunity*

Defendants also argue that they enjoy immunity pursuant to Ohio law. Given the foregoing analysis, the Court considers immunity under state law only as it relates to the City, Chief Jones, and Manager Elliott.

### a. *The City*

To determine whether a political subdivision enjoys immunity under Ohio's Political Subdivision Tort Liability Act (PSTLA), Ohio Rev. Code § 2744 *et seq.*, Ohio courts employ a three-tiered analysis. *Hortman v. Miamisburg*, 852 N.E.2d 716, 718 (Ohio 2006). Courts are to first examine whether the political subdivision falls within the general immunization from liability under Ohio Revised Code § 2744.02(A). *Id.* Courts are to next analyze whether an exception to immunity set out in Ohio Revised Code § 2744.02(B)(1)-(5) applies. *Id.* Finally, courts are to determine whether a defense under Ohio Revised Code § 2744.03 applies to reinstate immunity. *Id.*

Plaintiff admits that the City is a political subdivision (*see* Doc. 7 at PAGIED 128) and therefore generally immune for purposes of the first tier. Under Ohio Rev. Code § 2744.02(A)(1):

> [T]he functions of political subdivisions are hereby classified as governmental functions and proprietary functions. . . . [A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

*Id.*

Under the second tier, the first exception concerns the negligent operation of a motor vehicle and does not apply. *See id.* at § 2744.02(B)(1). The second exception concerns proprietary functions[6] and does not apply. *See id.* at § 2744.02(B)(2). The third exception concerns the negligent maintenance of public roads and does not apply. *See id.* at § 2744.02(B)(3). The fourth exception concerns negligence related to physical defects on or in public properties and does not apply. *See id.* at § 2744.02(B)(4). The fifth exception concerns

---

[6] The definition of proprietary functions (Ohio Rev. Code § 2744.01(G)(1)(a)) excludes functions set forth in Ohio Revised Code § 2744.01(C)(2), including "[t]he power . . . to protect persons" and "[t]he enforcement . . . of any law. . . ." (*id.* at § 2744.01(C)(2)(b) and (i)).

instances in which an Ohio statute otherwise expressly imposes liability on a political subdivision and does not apply. *See id.* at § 2744.02(B)(5).

Because the City does not lose its immunity pursuant to any of these exceptions, the third tier is not applicable. The City should be determined immune from plaintiff's state law claims under the PSTLA. *See Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 907-08 (S.D. Ohio 2016) ("Ohio courts have held that political subdivisions are immune from intentional torts such as . . . civil conspiracy. . . .") (citations omitted).

b. *Chief Jones and Manager Elliott*

Plaintiff's state law claims against Chief Jones and Manager Elliott also fail as a matter of law under the PSTLA. Ohio Revised Code § 2744.03(A)(6) states that immunity applies to political subdivision employees except in three circumstances:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

*Id.* at §§ 2744.03(A)(6)(a)-(c).

The Court sees nothing in the amended complaint that would invoke § 2744.03(A)(6)(c). Regarding § 2744.03(A)(6)(a), plaintiff does not plausibly allege conduct by Chief Jones or Manager Elliott outside the scope of their employment. Under Ohio law, the scope of employment—for purposes of intentional torts—"turns on . . . whether the [employee] acted, or

14

believed himself to have acted, at least in part, in his employer's interests." *Auer v. Paliath*, 17 N.E.3d 561, 566 (Ohio 2014) (quoting *Ohio Govt. Risk Mgt. Plan v. Harrison*, 874 N.E.2d 1155, 1159 (Ohio 1997)) (alteration in original). *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1144 (6th Cir. 1996) ("The scope of employment issue [under Ohio law] does not focus on the alleged wrongful nature of the employee's actions; rather, the issue is the actions complained of and whether those actions are 'so divergent that [their] very character severs the relationship of employer and employee.'") (quoting *Osborne v. Lyles*, 587 N.E.2d 825, 829 (Ohio 1992)) (alteration in original). While generally a question of fact, the scope of employment may be determined as a matter of law where "reasonable minds can come to but one conclusion. . . ." *Riotte v. Cleveland*, 960 N.E.2d 496, 501 (Ohio Ct. App. 2011) (quoting *Osborne*, 587 N.E.2d at 829).

The only specific actions by Chief Jones and Manager Elliott alleged in the amended complaint are their deliberations regarding and critique of the mass-gatherings ordinance and Chief Jones' enforcement of the mass-gatherings ordinance against others—which are not actions "so divergent that [their] very character severs the relationship of employer and employee." *Osborne*, 587 N.E.2d at 829 (quoting *Wiebold Studio, Inc. v. Old World Restorations, Inc.*, 484 N.E.2d 280, 287 (Ohio Ct. App. 1985)). Plaintiff's amended complaint does not make this case; at most, plaintiff argues that their actions were wrongful or illegal—if he implicates these particular defendants at all. (*See, e.g.*, Doc. 7, PAGEID 126 ("The numerous violations of the Ohio Constitution, . . . by the City . . . and its policymakers, are evidence of the abuse and misuse of [defendants'] privilege."); PAGEID 133 at ¶ 9 ("[The City councilors] did not heed the warnings of [Chief] Jones, regarding the brazenly unconstitutional nature of [the mass-gatherings ordinance].")); PAGEID 131 ("[The City councilors] think their ordinances are

laws. . . ."); PAGEID 133 at ¶ 9 (The City councilors "hold the false belief that their ordinances carry the same weight as laws.")).  But wrongfulness or illegality does not take an employee's action out of the scope of employment.  *See RMI Titanium Co.*, 78 F.3d at 1144.  While the determination of the scope of employment is generally an issue of fact, the Court finds "reasonable minds can come to but one conclusion" in this case that Chief Jones and Manager Elliott acted within the scopes of their employment.  *Id.* at 831.

With respect to § 2744.03(A)(6)(b), plaintiff refers to defendants' behavior being "reckless[] and callous[]. . . ."  (*See, e.g.*, Doc. 7 at PAGEID 130).   Under Ohio law:

> Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result.  [*Hawkins v. Ivy*, 363 N.E.2d 367, 369 (Ohio 1977)]; *see also Black's Law Dictionary* 1613-1614 (8th Ed. 2004) (explaining that one acting in a wanton manner is aware of the risk of the conduct but is not trying to avoid it and is indifferent to whether harm results).

> Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.  [*Thompson v. McNeill*, 559 N.E.2d 705, 708 (Ohio 1990)], adopting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965); *see also Black's Law Dictionary* 1298-1299 (8th Ed. 2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the risk, but the actor does not desire harm).

*Anderson v. Massillon*, 983 N.E.2d 266, 273 (Ohio 2012).

The City council meeting minutes attached and referred to in plaintiff's amended complaint (and therefore considered as part of this motion) undercut any reasonable inference that Chief Jones or Manager Elliott failed to exercise any care or consciously disregarded a substantial and unjustifiable risk of harm.  To the contrary, plaintiff alleges that these individuals expressed concerns with the mass-gatherings ordinance.  Plaintiff's argument also ignores the fact that the mass-gatherings ordinance itself, which Chief Jones allegedly enforced (though not

against plaintiff) demonstrates explicit regard for its legality—carving out exceptions for "religious gatherings" and "gatherings for the purpose of the expression of First Amendment protected speech. . . ."  (Doc. 1-2 at PAGEID 32).

Plaintiff's amended complaint does not plausibly allege that Chief Jones or Manager Elliott acted either outside the scope of their employment or recklessly or wantonly.  Plaintiff's state law claims should therefore be dismissed against Chief Jones and Manager Elliott pursuant to the PSTLA.

### C.  Federal conspiracy claims

Leaving aside the defendants insulated by absolute immunity, the Court considers plaintiff's federal conspiracy claims against the remaining defendants.

#### 1.  *42 U.S.C. § 1985(3)*

Section 1985 provides a cause of action for conspiracy to deprive an individual the equal protection of the law.  *See* 42 U.S.C. § 1985(3).  To state a § 1985(3) claim, plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983).  A § 1985(3) claim must also allege racial or class-based invidiously discriminatory animus driving the conspiracy.  *Id.* at 834 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  *See also McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 435 (6th Cir. 2006) ("The Sixth Circuit has ruled that § 1985(3) only applies to discrimination based on race or membership in a class which is one of 'those so-called 'discrete and insular' minorities that receive special protection under the Equal Protection Clause because of inherent personal

characteristics.") (quoting *Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir. 1991)).

Defendants argue that plaintiff's § 1985(3) conspiracy claim must fail because plaintiff does not allege racial or class-based invidiously discriminatory animus. Plaintiff urges his own reading of the Supreme Court's decision in *Griffin*, which is that the discriminatory-animus requirement was intended to qualify only the private § 1985(3) conspiracies first recognized in *Griffin* (as opposed to the conspiracy among state actors alleged here). The plain language of *Griffin*, however, simply does not warrant such qualification: "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. 88, 102 (1971).

In addition, though plaintiff downplays the significance of decisional law (*see* Doc. 33 at PAGEID 369), he offers no other binding authority to support his position. Federal courts "may not disregard Supreme Court precedent unless and until it has been overruled by the Court itself." *Taylor v. Buchanan*, 4 F.4th 406, 408 (6th Cir. 2021) (citing *Thompson v. Marietta Educ. Ass'n*, 972 F.3d 809, 813 (6th Cir. 2020)). Likewise, because this Court is a district court that sits in the Sixth Circuit, it "is not at liberty to disregard clearly established Sixth Circuit precedent." *Hawks v. Life Ins. Co. of N. Am.*, No. 3:15-cv-124, 2015 WL 9451067, at *3 (W.D. Ky. Dec. 23, 2015) (quoting *United States v. Adams*, No. 6:09-cr-16, 2009 WL 4799466, at *2 (E.D. Ky. Dec. 10, 2009)). As the amended complaint fails to allege racial or class-based invidious discrimination, plaintiff's conspiracy claim under § 1985(3) should be dismissed.

### 2. *Civil conspiracy*

Defendants argue that that plaintiff does not articulate whether his civil conspiracy claim is founded in state law, federal law, or both.  Given the Court's conclusion regarding the PSTLA, the Court considers the conspiracy claim under federal law:

> "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985).  To prove conspiracy, plaintiffs must show (1) "that there was a single plan," (2) "that the alleged coconspirator shared in the general conspiratorial objective," and (3) "that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id.* at 944 (citations omitted).

*Rieves v. Town of Smyrna, Tenn.*, No. 23-5106 (6th Cir. May 16, 2023).

Defendants argue that this claim is barred under the intracorporate conspiracy doctrine. Plaintiff argues in response that the Sixth Circuit has not ruled that the intracorporate conspiracy doctrine applies in a § 1983 action; and, in any event, it does not apply because the defendants' actions were not within the scope of their employment.  Defendants argue that plaintiff's allegation that defendants acted under color of state law effectively admits that their actions were within the scope of their employment.

The Sixth Circuit has held that "the intracorporate conspiracy doctrine applies in § 1983 suits to bar conspiracy claims where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights." *Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019).  The Sixth Circuit has explained that the scope-of-employment exception to the intracorporate conspiracy doctrine "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840 (6th Cir. 1994).  *Compare id.* at 841 ("Even if the employees lacked the necessary qualifications to prescribe proper

medical treatment, that . . . does not establish that they acted outside the course of their employment.  It is clear that their comments were connected to the legitimate business of [the defendant] and the work of its staff.") *with DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604, 615 (6th Cir. 2015) ("[I]mproper abuse of . . . authority for personal gain or malicious intent was outside of the scope of . . . employment.").  *Cf. Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (considering the scope of employment in the context of the Federal Tort Claims Act) ("The mere fact that his actions may have been unlawful . . . is not enough, by itself, to find the actions outside his authority.").

In the section of his opposition dedicated to the intracorporate conspiracy doctrine, plaintiff implies that defendants' actions were outside the scope of employment but does not identify particular actions.  (Doc. 33 at PAGEID 374 ("The intracorporate conspiracy doctrine 'provides that members of the same entity cannot conspire with one another as long as their alleged acts were **within the scope** of their employment."  *Burgess v. Fischer*, 375 F.3d 462 483 (6th Cir. 2013)") (emphasis plaintiff's)).  For the reasons discussed in part III.B.3.b above, plaintiff does not plausibly allege that Chief Jones or Manager Elliott acted outside the scope of their employment.  Dismissal of plaintiff's federal civil conspiracy claim is therefore appropriate based on the intracorporate conspiracy doctrine against the remaining defendants.

D. *Monell*

Although the Court concludes that each of the individual defendants enjoys either qualified or absolute immunity from plaintiff's constitutional claims, the Court nevertheless considers whether the City is liable under § 1983.  *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000) ("[I]f the legal requirements of *municipal* . . . civil rights liability are satisfied, qualified immunity will *not* automatically excuse a municipality . . . from constitutional liability,

20

even where the municipal . . . actors were personally absolved by qualified immunity, *if* those agents *in fact* had invaded the plaintiff's constitutional rights.") (footnote and citation omitted); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 238 (6th Cir. 1992) ("[I]t is possible that city officials may be entitled to qualified immunity for certain actions while the municipality may nevertheless be held liable for the same actions.") (footnote omitted); *Caron v. City of Oakwood*, No. C-3-91-409, 1993 WL 1377512, at *19 (S.D. Ohio Dec. 30, 1993) ("[I]t is not unreasonable to read [*Owen v. City of Independence*, 445 U.S. 622 (1980)], as denying municipalities the ability to take advantage of any immunity, absolute or qualified, accorded individual officers in § 1983 actions."); and *Wagner v. Genesee Cnty. Bd. of Comm'rs*, 607 F. Supp. 1158, 1167, 1170 (E.D. Mich. 1985) (a municipality remains liable under *Monell* even if individual defendants are found absolutely immune).

For liability to attach to a municipal entity under § 1983, "a plaintiff must show: (1) a deprivation of a constitutional right; and (2) that the municipal entity is responsible for that deprivation."  *Baynes*, 799 F.3d at 620 (quoting *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 505-06 (6th Cir. 1996)).  *See also Burgess*, 735 F.3d at 478 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)) ("A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom.").  A plaintiff shows an illegal policy or custom one of four ways: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."  *Id.*

As to the first element of municipal liability, defendants argue that plaintiff has failed to identify a policy or custom of the City that inflicted constitutional injury.  Plaintiff argues in response that the mass-gatherings ordinance was an illegal legislative enactment.  In reply, defendants characterize plaintiff's *Monell* claim as one based on inadequate training/supervision that is too vague and conclusory to state a *Monell* claim against the City.

The Court finds plaintiff's complaint clearly alleges "the existence of an illegal official policy or legislative enactment": the mass-gatherings ordinance.  *Id.*  (*See* Doc. 7, PAGEID 134 at ¶ 14 ("[The mass-gatherings ordinance] is unconstitutional on its face.  [The mass-gatherings ordinance] violates the First Amendment.")).  Plaintiff also alleges that "the city policymaker's lack of constitutional training" led to the alleged constitutional violations.  (Doc. 7, PAGEID 141 at ¶ 35).  Failure to train claims, however, require a showing of deliberate indifference.  *See Amerson v. Waterford Twp.*, 562 F. App'x 484, 490 (6th Cir. 2014) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).  And deliberate indifference "typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures."  *Amerson*, 562 F. App'x at 490 (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803, 815 (6th Cir. 2005)).  Plaintiff alleges no such history of prior unconstitutional action.  Plaintiff does not otherwise allege that deficient training would have addressed "recurring situations presenting an obvious potential for such a violation. . . ."  *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

In any event, however, municipal liability also requires plaintiff to demonstrate the underlying deprivation of a constitutional right.  *Baynes*, 799 F.3d at 622 ("Without an underlying unconstitutional act, Baynes' claim against the County under § 1983 must also fail.").

Defendants argue that plaintiff has failed to plausibly allege any violation of his First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, or Fourteenth Amendment rights.  Plaintiff does not rebut defendants' argument that his Fourth, Fifth, Sixth, Eighth, and Ninth Amendment claims are unsupported by any factual allegations, but he maintains that defendants violated his First and Fourteenth Amendment rights "either by voting . . . approval or enforcement" of the mass-gatherings ordinance.  (Doc. 33 at PAGEID 371).  In reply, defendant reiterates that plaintiff has not plausibly alleged that violations of these constitutional rights occurred.

Even a liberal construction of plaintiff's amended complaint does not reveal factual bases to support any violation of *plaintiff's* Fourth, Fifth, Sixth, Seventh, Eighth, or Ninth Amendment rights at all.  Plaintiff's amended complaint instead alleges that "23 citizens" suffered these constitutional violations.  (*See* Doc. 7, PAGEID 145-46 at ¶¶ 49-54).  Without any allegations supporting the deprivation of *plaintiff's* rights under these constitutional amendments, any associated *Monell* claim cannot survive.  *See Marcum*, 2006 WL 543714, at *1; *Dodson*, 304 F. App'x at 438.

As to the Fourteenth Amendment, plaintiff's amended complaint fails to allege a plausible Equal Protection violation.  The Equal Protection clause "bars governmental discrimination that either (1) burdens a fundamental right, (2) targets a suspect class, or (3) intentionally treats one differently from others similarly situated without any rational basis for the difference.  *Green Genie, Inc. v. City of Detroit, Mich.*, 63 F.4th 521, 527 (6th Cir. 2023) (citing *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005)).  "[A] valid equal-protection claim requires showing 'that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"  *Reform Am. v. City of*

*Detroit, Mich.*, 37 F.4th 1138, 1152 (6th Cir. 2022) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)) (internal quotation marks omitted).

Plaintiff alleges that he belongs to a class of those with larger families. (*See* Doc. 7 at PAGEID 142-44). Defendants focus on the fact that "large families" are not a suspect or quasi-suspect class, such as race or gender, which would trigger heightened scrutiny of the mass-gatherings ordinance. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 441, 448 (6th Cir. 2012) (citing *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 290-91 (1978)) (race); *Craig v. Boren*, 429 U.S. 190, 197 (1976) (gender); and *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) (strict scrutiny applies to governmental discrimination that targets a suspect class). Critically, however, plaintiff does not allege that individuals having smaller families were treated differently under the mass-gathering ordinance; rather, members of both groups were prohibited from "hosting, maintaining or participating in mass gatherings" that brought together "greater than ten (10) non-household persons at the same time." (Doc. 1-2 at PAGEID 31). "[D]isparate impact without evidence of discriminatory intent does not violate the Equal Protection Clause[.]" *Reform Am.*, 37 F.4th at 1152 (citing *Washington v. Davis*, 426 U.S. 229, 245-46 (1976)). Plaintiff fails to plausibly allege a Fourteenth Amendment Equal Protection claim for purposes of municipal liability.

Plaintiff also fails to plausibly allege a Privileges or Immunities claim under the Fourteenth Amendment. "[T]he Privileges or Immunities Clause of the Fourteenth Amendment prohibits states from abridging the privileges or immunities of national citizenship." *Johnson v. Bredesen*, 624 F.3d 742, 751-52 (6th Cir. 2010). This clause has been "[l]argely dormant" since the *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1872). *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 902 (6th Cir. 2014) (quoting *Johnson*, 624 F.3d at 751-52) (alteration in

original).  *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 758-59 (2010) ("For many decades, the question of the rights protected by the Fourteenth Amendment against state infringement[7] has been analyzed under the Due Process Clause of that Amendment and not under the Privileges or Immunities Clause.").  As such, plaintiff's complaint fails to plausibly allege a violation of the Privileges or Immunities clause of the Fourteenth Amendment for purposes of municipal liability.

This leaves whether plaintiff plausibly alleges that the mass-gatherings ordinance violated his rights under the First Amendment.  The First Amendment protects the freedom of expressive association—the "right to assembly, speech, petition for the redress of grievances, and the exercise of religion. . . ."  *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 587 (6th Cir. 2013) (citing *Anderson v. City of LaVergne*, 371 F.3d 879, 881-82 (6th. Cir. 2004)).[8]  *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) ("[W]e have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.").  "Courts typically evaluate free speech, assembly and petition claims under the same analysis."  *Ramsek v. Beshear*, 468 F. Supp. 3d 904, 914 (E.D. Ky. 2020), *appeal dismissed and remanded*, 989 F.3d 494 (6th Cir. 2021), *and order dissolved*, No. 3:20-cv-36, 2021 WL 5098687 (E.D. Ky. Nov. 2, 2021).

---

[7] "Municipal ordinances adopted by state authority may constitute state action and are within the prohibition of the Fourteenth Amendment."  *Palmer v. Columbia Gas of Ohio, Inc.*, 479 F.2d 153, 164 n.16 (6th Cir. 1973) (citing *Lovell v. Griffin*, 303 U.S. 444, 450 (1938)).

[8] This is contrasted with intimate association claims, which while related to the First Amendment, are generally found derived from the Fourteenth Amendment's Due Process Clause.  *Id.* (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984) (stating that such claims "attend the creation and sustenance of a family[,]" such as marriage, childbirth, the raising and education of children, and cohabitation with one's relatives)).  Plaintiff's allegations do not fit within these categories.

Plaintiff does not appear to allege that the mass-gatherings ordinance was a content-based restriction on conduct.[9] "[C]ontent-neutral time, place, and manner restrictions will be upheld so long as they are 'narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Pleasant View Baptist Church v. Saddler*, 506 F. Supp. 3d 510, 522 (E.D. Ky. 2020) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)).

Starting with the governmental interest at issue, the City's interest in passing the mass-gatherings ordinance was unquestionably significant. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 208 L. Ed. 2d 206, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest."). Plaintiff's amended complaint does not address whether the mass-gatherings ordinance left open alternative channels of communication, and decisions in other jurisdictions have concluded that gathering restrictions like those at issue here left open such channels. *See, e.g.*, *Amato v. Elicker*, 534 F. Supp. 3d 196, 211 (D. Conn. 2021) (granting motion to dismiss) ("Plaintiffs could engage in communication online, by telephone, or in person in groups no larger than those allowed under Executive Order 7N."); *Martin v. Warren*, 482 F. Supp. 3d 51, 54, 76 (W.D.N.Y. 2020) (denying preliminary injunction) (alternative channels of communication were available where the challenged order restricted gatherings of more than four persons outdoors and more than nine persons indoors between certain hours); and *Geller v. de Blasio*, 613 F. Supp. 3d 742, 749 (S.D.N.Y. 2020) (denying preliminary injunction) ("The

---

[9] There is no indication that City imposed the mass-gatherings ordinance "because of disagreement with the message [the gatherings prohibited thereby] convey[ed]." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citation omitted).

plaintiff is free to express her discontent online, through media, and by protesting in public on her own.  For now, these are acceptable alternatives to public group protests.").

Plaintiff does, however, allege that the mass-gatherings ordinance was not narrowly tailored.  (*See* Doc. 7, PAGEID 140 at ¶ 33; PAGEID 142 at ¶ 42).  But by its very terms, the mass-gatherings ordinance "does not apply to and/or excludes religious gatherings, gatherings for the purpose of the expression of First Amendment protected speech, weddings and funerals[,]" among various other carve-outs.  (Doc. 1-2 at PAGEID 32).  In addition, in the preliminary-injunction posture, the court in *Saddler* considered an executive order similar to the mass-gatherings ordinance and concluded that the facts that (1) groups of under eight could still socially gather indoors, (2) groups could still gather in socially-distanced outdoor public venues, (3) online meeting remained an option, (4) non-social gatherings were not restricted, and (5) the order was temporary all demonstrated that the challenged order was narrowly tailored.  506 F. Supp. 3d at 522-23.  By contrast, the same court found that "a blanket prohibition on gathering in large groups to express constitutionally protected speech" was not narrowly tailored and granted a motion for preliminary inunction.  *Ramsek*, 468 F. Supp. 3d at 907, 919-21.

The mass-gatherings ordinance contained the same features as the executive order considered in *Saddler*.  Given the foregoing, the Court determines as a matter of law that the mass-gatherings ordinance was narrowly tailored.  *See O'Toole v. O'Connor*, No. 2:15-cv-1446, 2016 WL 4394135, at *3 (S.D. Ohio Aug. 18, 2016) ("A state's compelling interest or a regulation's tailoring could be the subject of factual discovery, but in the context presented here, the Court finds ample support in the law to decide whether Ohio has a compelling interest and whether it has narrowly tailored the rules to forward that interest.").  As such, plaintiff has not

plausibly alleged a violation of his First Amendment rights, and his *Monell* claim should be dismissed.

Because the Court concludes that all of plaintiff's state and federal claims should be dismissed, the Court does not address defendants' objections to various elements of plaintiff's requested relief or whether the official-capacity claims should be dismissed as redundant.

     E.  Rule 12(d)

In a separate motion (Doc. 27), plaintiff argues that the Court must treat defendants' motion for judgment on the pleadings as one for summary judgment pursuant to Fed. R. Civ. P. 12(d), which states:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

*Id.*  Plaintiff argues that the following arguments/defenses of defendants constitute matters outside the pleadings as contemplated by Rule 12(d):

> 1) 42 USC 1985(3) is inapplicable due to no allegations of discriminatory animus.
> 2) Civil Conspiracy cause of action is barred by the intracorporate conspiracy doctrine.
> 3) Plaintiff cannot recover for Negligent Infliction of Emotional Distress because he was not a bystander to an accident.
> 4) Injunctive relief claims are moot as the ordinance at issue is no longer in effect.
> 5) The claim for punitive damages should be dismissed because such damages cannot be recovered against the City, and there are no factual allegations establishing malice or callous indifference by the individual defendants.
> 6) Plaintiff cannot recover attorney fees under the state law violations.

(Doc. 27 at PAGEID 331).  Plaintiff withdrew his negligent infliction of emotional distress and injunctive relief claims—mooting numbers three and four.  (*See* Doc. 33 at PAGEID 375).

Plaintiff takes issue with defendants' arguments concerning the elements of a § 1985(3) claim, the applicability of the intracorporate conspiracy doctrine to plaintiff's civil conspiracy

claim, and the availability of punitive damages, and attorney fees. As demonstrated in the foregoing Report and Recommendation, however, these issues can all be determined by application of the law to plaintiff's complaint and attachments thereto and without reference to other materials. As such, the Court need not convert the motion into a motion for summary judgment under Rule 56.

<strong>IT IS THEREFORE ORDERED THAT</strong>:

1. Plaintiff's motion to convert defendants' Rule 12(c) motion into a motion for summary judgment (Doc. 27) is **DENIED**.

<strong>IT IS THEREFORE RECOMMENDED THAT</strong>:

2. Defendants' motion (Doc. 20) be **GRANTED**.

Date: 6/7/2023

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TATE PROWS,                                          Case No. 1:22-cv-693
      Plaintiff,                               Cole, J.
                                                     Litkovitz, M.J.
      v.

CITY OF OXFORD, *et al.*,
      Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).