UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TATE DAVID PROWS,

    Plaintiff,

  v.

CITY OF OXFORD, *et al.*,

    Defendants.

Case No. 1:22-cv-693
JUDGE DOUGLAS R. COLE
Magistrate Judge Litkovitz

### OPINION AND ORDER

In the early days of the COVID-19 pandemic, the City of Oxford, Ohio restricted private gatherings to control the virus's spread. Tate Prows, who lives in the City, believes this policy violated his rights and the rights of others like him. Proceeding pro se, Prows sued the City of Oxford and its agents under federal and state law. Defendants moved for judgment on the pleadings, and the Magistrate Judge issued an Order and Report and Recommendation (R&R) (Doc. 49) advising the Court to grant the motion and dismiss Prows's Complaint (Doc. 1), and also ruling on another related motion. Prows objected. (Doc. 50). The R&R and Prows's Objections are now before the Court.

As discussed below, the Court finds that Prows lacks standing. Accordingly, the Court **DISMISSES** Prows's Amended Complaint (Doc. 7) **WITHOUT PREJUDICE**. The Court **DENIES** all other motions **AS MOOT**.

### BACKGROUND

Starting in 2020, the COVID-19 pandemic descended upon the United States and severely disrupted daily life. Responding to concerns about the virus's spread,

the Oxford City Council convened in August 2020 to implement restrictions on large gatherings within city limits. (Doc. 7, #131). During that meeting, the Oxford City Council adopted Ordinance 3579, which limited certain gatherings of 10 or more persons:

> Section 1. All individuals within the City of Oxford are prohibited from hosting, maintaining or participating in mass gatherings in accordance with the following:
>> a. "Mass gatherings" for purposes of this Ordinance, means any social gathering, event or convening that brings together greater than ten (10) non-household persons at the same time, to include both indoor and outdoor gatherings.
>>
>> b. "Non-household" for purposes of this Ordinance, means any individuals who do not reside within the same housing unit or dwelling.

(Doc. 1-2, #31). The Ordinance, though, included many exceptions. For example, it exempted from its prohibition members of the media, religious gatherings, and gatherings for First Amendment expressive purposes.

> Section 2. The mandatory prohibition on mass gatherings through this Ordinance does not apply in the following situations:
>
> …
>
> h. This Ordinance does not apply to and/or excludes members of the media.
>
> i. This Ordinance does not apply to and/or excludes religious gatherings, gatherings for the purpose of the expression of First Amendment protected speech, weddings and funerals.

(*Id.* at #31—32).

By its own terms, the Ordinance would remain in effect only "during the pendency of State of Ohio Executive Order 2020-01D." (*Id.* at #33). After the City enacted the Ordinance, local police began enforcing the restrictions with $500 fines. (Doc. 7, #145). Officers issued citations to twenty-three people. (*Id.*). But on June 18,

2021, Ohio Governor Mike DeWine rescinded Executive Order 2020-01D, which also ended Ordinance 3579. *See* Ohio Exec. Order No. 2021-08D.

Plaintiff Tate Prows lives in Oxford, Ohio. (Doc. 7, #128). He alleges that while Ordinance 3579 was in effect, it deterred him from gathering with family during the 2020 Holiday Season. (*Id.* at #137). Prows never alleges officers cited him for violating the Ordinance, or even that they threatened to do so. But he does note that he saw videos on YouTube in which the City was enforcing the Ordinance against college students at Miami University, which is in the City. (*Id.* at #134–35). And he says that these enforcement efforts caused him concern that the City would likewise enforce it against him. (*Id.* at #135). In any event, he believes that the mere existence of the Ordinance violated his rights and the rights of his neighbors.

On November 28, 2022, some seventeen months after the Ordinance lost effect, Prows sued the City and its agents. (Doc. 1). In his Amended Complaint, the operative complaint here, Prows names the City of Oxford, along with the following city officials in their individual and official capacities: Mayor Michael Smith, Vice-Mayor William Snavely, Police Chief John Jones, City Manager Doug Elliot, and City Councilors David Prytherch, Edna Southard, Jason Bracken, Glenn Ellerbe, and Chantel Raghu. (Doc. 7, #124). His Amended Complaint presses six claims. The first three arise under § 1983 and allege violations of the First Amendment (Count 1), the Fourteenth Amendment (Count 2), and the Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Amendments (Count 3). Next, he asserts a claim under 42 U.S.C. § 1985(3). Finally,

3

he (apparently) presents two state-law claims: a claim for Civil Conspiracy (Count 5)[1] and a claim for Negligent Infliction of Emotional Distress (Count 6). (*Id.* at #135–51).

Defendants answered (Doc. 13) and then moved for judgment on the pleadings. (Doc. 20). In the motion, Defendants argued Prows lacked standing to pursue his claims and had failed to plausibly allege any claim. (*See id.*). Prows responded multiple ways. First, Prows moved to strike Defendants' Answer. (Doc. 19). Second, Prows moved to convert Defendants' Rule 12(c) Motion into a Motion for Summary Judgment. (Doc. 27). Third, Prows moved twice for leave to amend his Complaint. (Docs. 34, 38). Finally, Prows responded on the merits. (Doc. 33).

The Court referred the matter to the Magistrate Judge (*see* Doc. 46), and the Magistrate Judge issued an Order and Report and Recommendation (R&R, Doc. 49). There, the Magistrate Judge first found that Prows had standing to pursue this action. (*Id.* at #485). She next analyzed Prows's various claims before (1) denying Prows's Motion to Convert Rule 12(c) Motion into a Motion for Summary Judgment and (2) recommending that the Court grant Defendants' Motion for Judgment on the Pleadings in full. (*Id.* at #506). The Magistrate Judge also notified the parties that they had fourteen days to lodge specific objections. (*Id.* at #507). Prows objected, but only as to the recommendation concerning Defendants' Motion for Judgment on the Pleadings. (Doc. 50). He did not discuss the Magistrate Judge's order denying his Motion to Convert. (*Id.*).

---

[1] Prows never clarifies whether his Civil Conspiracy claim proceeds under federal or state law. But for purposes of this Opinion, it does not matter.

At Prows's request, the Court heard argument on Prows's objections to the R&R. During argument, the Court inquired as to Prows's alleged injury. Prows explained that he viewed his injury-in-fact as the "chilling" effect the Ordinance had on his First Amendment rights. Elsewhere in his papers, though, he raises the possibility that his injury was the emotional harm he suffered in not gathering with his family while the Ordinance was in effect or, in other words, the emotional injury that he says resulted from the chilling.

The matter is now ripe.

## LAW AND ANALYSIS

Before the Magistrate Judge, Defendants attacked Prows's standing and also mounted several challenges to the merits of his claims. The R&R largely agreed with the Defendants on the merits but rejected their concerns about standing. Prows now objects to the R&R, arguing that he has presented meritorious claims. The Court, however, concludes it cannot reach those issues. That is because this Court has an independent obligation to assess its own jurisdiction. And based on its review of the facts here, the Court concludes that Prows lacks standing. As that lack of standing precludes the Court's consideration of the merits and requires dismissal, this Opinion does not address the Magistrate Judge's reasoning on the merits.

"Standing stems from the Constitution's mandate that federal courts may decide only 'Cases' or 'Controversies.'" *Vonderhaar v. Vill. of Evendale*, 906 F.3d 397, 400–01 (6th Cir. 2018) (citing U.S. Const. art. III, § 2, cl. 1). Consistent with that language, standing is designed to ensure that courts decide live disputes, rather than

5

"issue advisory opinions or address statutes 'in the abstract.'" *L.W. by & through Williams v. Skrmetti*, 73 F.4th 408, 415 (6th Cir. 2023) (quoting *California v. Texas*, 141 S. Ct. 2104, 2115 (2021)).

Because standing is a prerequisite to subject-matter jurisdiction, a court may (indeed, has an obligation to) evaluate the issue at any time, even sua sponte. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007). Standing requires a plaintiff to make three showings: "(1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

To meet the first prong, a plaintiff must show a concrete and particularized, actual past injury or imminent future injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). "By particularized, we mean that the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n. 1. By contrast, "a 'generalized grievance,' no matter how sincere, is insufficient to confer standing." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013); *see, e.g.*, *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes the [judicial] power must be able to show ... that he has sustained or is immediately in danger of sustaining some direct injury ... and not merely that he suffers in some indefinite way in common with people generally.").

Prows does not allege a traditional injury. He does not say, for example, that Oxford fined or arrested him for violating the Ordinance, or even that City agents or

6

officials threatened enforcement against him personally. Likewise, Prows does not claim to fear an imminent future injury. The Ordinance has lost effect, and Prows does not suggest that Oxford plans to reinstate it.

Rather, Prows asserts standing based on what he chose not to do while the Ordinance was in effect. He alleges the Ordinance "chilled" his First Amendment "right … to assemble" with his family for the 2020 Holiday season. (Doc. 7, #130, 135–36). And at the hearing, Prows also focused on this "chilling" effect the Ordinance allegedly had on him. In support of his claim that the City "chilled" his activities, he first notes that City officials (1) threatened to enforce the Ordinance against Oxford residents generally, and (2) did in fact enforce it against some other residents. (*Id.* at #134–35). Prows says that, fearing the same treatment, he complied with the Ordinance. (*Id.* at #135). And, from complying, Prows says he suffered "severe emotional trauma and anxiety which manifested itself in numerous physical symptomologies." (*Id.*). So, the question the Court must answer is whether either the "chilling" or the resulting "emotional trauma and anxiety" suffice as the injury needed to support standing. The Court concludes that neither does.

Let's start with chilling. The basic argument is that enforcement against others led Prows to fear imminent enforcement against him, making him change his behavior. In the pre-enforcement context, that argument often works. But that is because, in the pre-enforcement context, a plaintiff can rely on a threatened *future* injury for standing purposes, so long as that injury is sufficiently probable and sufficiently imminent. *Block v. Canepa*, 74 F.4th 400, 408–09 (6th Cir. 2023) ("When

7

a plaintiff brings a pre-enforcement challenge, '[a]n allegation of future injury may suffice' to show an injury in fact 'if the threatened injury is "certainly impending," or there is a "substantial risk" that the harm will occur.'") (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Enforcement against others is one way that potential enforcement against the plaintiff can become sufficiently probable and imminent. But, as that shows, when a plaintiff claims chilling in that context, it is the *enforcement* itself (sufficiently imminent and probable) that is the injury.

But that theory does not work for Prows here. Well settled law holds that standing is measured at the time a plaintiff files his or her action. *See, e.g., Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 580 (6th Cir. 2012). At the time Prows sued, even if City officials had enforced the Ordinance against others in the past, Prows could not have feared imminent future enforcement against him because the Ordinance had already lost effect. Further highlighting the disconnect, in the pre-enforcement context, the relief plaintiffs typically seek is a prohibition on future enforcement. Again, that is something not at issue here. In short, "chilling" as it is used in the pre-enforcement standing framework—where it is inextricably linked to the injury arising from potential enforcement—simply does not translate neatly to a post-Ordinance world.

But can past chilling *itself* (divorced from current fears of potential enforcement) suffice when a plaintiff seeks damages for that chilling? One could read *Morrison v. Board of Educ. of Boyd County*, 521 F.3d 602 (6th Cir. 2008), as suggesting that the answer may be yes. There, a school board had adopted "a written

8

policy prohibiting students from making stigmatizing or insulting comments regarding another student's sexual orientation." *Id*. at 605. Morrison was "a Christian who believe[d] that homosexuality is a sin," but, "[w]ary of potential punishment," he chose to "remain[] silent with respect to his personal beliefs." *Id*. While the policy was still in effect, he sued. But, after he filed his lawsuit, the Board changed the policy. That left the court to decide "whether Morrison's claim for nominal damages, premised upon a 'chill' on his speech [while the policy was in effect] presents a justiciable controversy." *Id*.

The Sixth Circuit said no, but that was because it found Morrison suffered only a "subjective chill," which did not suffice to support standing. *Id.* at 610. Morrison's chill was subjective because he simply assumed that the policy would be applied to him, without being able to point to any conduct on the defendants' part, beyond adopting the policy, that would support that assumption. *Id*. But the Sixth Circuit left open the possibility that an objectively reasonable chill—changing behavior based on an objectively reasonable fear of enforcement—may suffice to support a claim for nominal damages. Here, Prows could argue that seeing the Ordinance enforced against others made it objectively reasonable for Prows to believe it likewise would be enforced against him, so that his change in behavior—not inviting family over to celebrate the holidays—was not merely a subjective chill.

However, for two reasons, the Court concludes that *Morrison* does not help Prows. First, there, in answering "what 'more' might be required to substantiate an otherwise-subjective allegation of chill, such that a litigant would demonstrate a

9

proper injury-in-fact," the examples the Sixth Circuit provided all involved chill arising from threats of enforcement *against the plaintiffs themselves*. *Id.* at 609. Here, of course, the City took no actions against Prows himself so, if that is required to make chilling "objective," Prows suffered only subjective chilling.

But even if enforcement against others could give rise to "objective" chilling, *Morrison* is distinguishable on a perhaps more important ground. There, the plaintiff filed *while the policy was still in effect*. *Id.* at 606–607. True, by the time *Morrison* arrived at the Sixth Circuit the underlying facts had changed and the policy was no longer in effect. But that does not change the *standing* analysis because, as noted, standing is measured at the time a suit is filed. Post-filing changes affect only mootness. So, understood that way, *Morrison* is just a typical pre-enforcement action predicated on a threatened future injury. In that context, *Morrison* is just one of many cases that says that, for such pre-enforcement actions, the future harm must be sufficiently imminent and probable for standing to arise. That is all well and good, but it tells us little about cases in which the policy changes *before* suit is filed, which is what matters here.

Another case that discusses the issue also picks up on both these strands. In *Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 549 (4th Cir. 2010), the Fourth Circuit said that "an actual chilling of protected speech is a discrete infringement of First Amendment rights that gives rise to a claim under § 1983 for at least nominal damages." But "actual chilling" as the Fourth Circuit used it there seems to mean chilling that arose from actual application of the policy in some fashion *to the plaintiff*

10

*himself*. For the *Hrabowski* court went on to observe that "plaintiffs may not assert claims for damages against a speech policy that was never actually applied to them." *Id*. And in *Hrabowski*, as in *Morrison*, plaintiff initially brought suit while the policy was still in effect. *Id*. at 545.

When a plaintiff opts not to sue until the challenged law or policy is a dead letter, though, courts should be leery of relying on claims of "chilling" to support standing. Such claims are easy to make and difficult to disprove. More importantly, recognizing dubious claims of past chilling, absent any prospect of future enforcement, threatens to drag courts into resolving often thorny questions of constitutional law in a setting where the result matters little. As the Sixth Circuit put it in *Morrison*, where the policy ended after the suit started, "[t]his is a case about nothing." 521 F.3d at 607. That is all the more true when, as here, a plaintiff waits some seventeen months after an ordinance lapses to challenge it. In short, the Court concludes that where the challenged law or policy is not in effect at the time suit commences, plaintiffs relying on past chilling as their injury must, at the very least, substantiate such claims with allegations of official conduct directed at the plaintiffs themselves. Absent such allegations, none of which Prows has made here, any claimed "chilling," on its own, is not a concrete and particularized injury that will support standing.

That leaves Prows's claim that he suffered an emotional injury from past compliance with the now-defunct Ordinance. True, if a plaintiff has suffered a compensable injury based on past enforcement of an unconstitutional statute, a

11

defendant cannot moot an action by repealing the statute. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021). And a corollary necessarily follows—a plaintiff who has a viable claim for money damages based on a prior enforcement action always has standing.

But, at the risk of over-repetition, Oxford never enforced the Ordinance against Prows. Instead, Prows says enforcement against others caused him to change his conduct, giving rise to "emotional trauma" that led to "physical symptomologies." (Doc. 7, #135). To Prows's credit, the Sixth Circuit has recognized that, at least in some cases, "extreme emotional distress can suffice as an injury-in-fact to confer Article III standing." *Van Vleck v. Leikin, Ingber, Winters, P.C.*, No. 22-1859, 2023 WL 3123696, at *6 (6th Cir. Apr. 27, 2023). For example, the circuit has allowed religious congregants to sue protestors who targeted their church services, finding standing based on the parishioners' extreme emotional injuries. *Gerber v. Herskovitz*, 14 F.4th 500, 506 (6th Cir. 2021). Indeed, our common law heritage has, for centuries, recognized some purely emotional injuries as sufficient to support suit. *See I de S et ux v. W de S*, Y.B. 22 Edw. III, f. 99, pl. 60 (1348) (allowing a tavern owner's wife to recover against a disgruntled patron for her fear of almost being hit by their hatchet). The long-recognized intentional tort of assault, after all, is defined as conduct that is intended to cause a "reasonable apprehension of imminent harmful or offensive contact." *Assault*, BLACK'S LAW DICTIONARY (11th ed. 2019). And that apprehension itself has long been understood as an injury that can provide a basis for damages.

*See, e.g., Allen v Hannaford*, 244 P. 700 (Wash. 1926) (affirming verdict in assault case of $750 for fear created when defendant threatened plaintiff with a gun).

Note, however, that in such cases, the alleged emotional injury arises from conduct specifically directed at the plaintiff. In *Gerber*, the protestors targeted the congregant-plaintiffs. In *I de S*, the patron swung a hatchet at the tavern owner's wife.[2] And in *Allen* the threatened party was the plaintiff himself.[3]

Here, by contrast, Prows's emotional trauma did not arise from the City or any City agent taking an action directed at him personally. So, even though "emotional trauma" can serve as a concrete injury for standing purposes in some circumstances, the emotional injury that Prows claims here is not "particularized" to him. Rather, it is the same "injury" that every City citizen suffered—the "injury" of complying with an allegedly unconstitutional law, thereby forgoing large gatherings. *See Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 757 (6th Cir. 2019) ("An injury is particularized if it affects the plaintiff in a personal and individual way." (cleaned up)). Or, as one Sixth Circuit judge put it, "[e]ven when the government's alleged violation of a law

---

[2] Granted, the antiquated law at that time meant that the tavern owner's wife could not sue in her own name but, rather, only under her husband's. John J. Kircher, *The Four Faces of Tort Law: Liability for Emotional Harm*, 90 Marq. L. Rev. 789, 790 n.4 (2007). For practical purposes, though, the patron directed a particularized harm at the real plaintiff-in-interest.

[3] True, there are some minor exceptions to the directed-at-the-plaintiff rule. For example, in cases involving claims of negligent or intentional infliction of emotional distress, the underlying harmful act may be directed at one person, resulting in emotional harm to another (for example, harming a child in front of the child's mother). In those cases, the harm arising from conduct directed at the first person (the child) provides standing to the other (the mother). But such claims have very limited scope—the harm must be directed at someone closely related to the plaintiff (usually a family member). While Prows asserts a claim for negligent infliction of emotional distress, he alleges no physically harmful conduct directed at anyone in a close relationship to him. (Compl., Doc. 1, #23–24)

13

produces mental distress in the party who seeks to challenge it, that sort of 'psychological' trauma alone is not an injury sufficient to confer standing under Art. III." *See Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 873 (6th Cir. 2020) (quotation omitted) (Murphy, J., concurring).

Of course, had the City fined Prows, that would suffice. *See Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 426 (6th Cir. 2019) (Rogers, J., concurring) ("[A] money damages suit is generally an Article III case or controversy."). Or, had Prows told law enforcement he planned to gather with his family, only to be advised he could not, any resulting severe emotional damages might work. But that is because, on those facts, his emotional trauma might have had a sufficient link to conduct directed at Prows himself to meet the "particularized" threshold. Here, based on Prows's Amended Complaint, the City's only "conduct" consisted of (1) passing the ordinance and (2) enforcing it against others, causing Prows to change his behavior. For the reasons above, Prows suffered at most a "generalized grievance," which courts routinely reject as a basis for standing. *See Hollingsworth*, 570 U.S. at 706.

In sum, to assert Article III standing in a damages action based on alleged past chilling or a resulting past emotional injury, Prows must show that, at the very least, he suffered that injury from conduct the City or its agents in some way directed at him. He has not done so.[4]

---

[4] Or perhaps this is all better understood through the lens of redressability, the third prong of the standing analysis. The chilling effect injury, or resulting emotional injury, that Prows alleges here plausibly gives rise to, at most, a claim for nominal damages. But such damages support standing only when they arise from a "completed violation." *See Uzuegbunam*, 141 S. Ct. at 802. Merely passing an ordinance (or enacting a regulatory policy, as in *Uzuegbunam*) cannot in and of itself "complete" a violation, as otherwise the category

14

## CONCLUSION

For the above reasons, the Court **DISMISSES** Prows's Amended Complaint (Doc. 7) **WITHOUT PREJUDICE** for lack of standing. The Court **DENIES** all other motions **AS MOOT**. The Court **ORDERS** the Clerk to enter judgment and **TERMINATE** this matter from the Court's docket.

    **SO ORDERED.**

August 24, 2023
**DATE**

**DOUGLAS R. COLE
UNITED STATES DISTRICT JUDGE**

---

"uncompleted violation" would be a null set. Therefore, passing the Ordinance, even if unconstitutional, cannot be a "completed violation" as *Uzuegbunam* uses the term. Further, in deciding what made the violation there "complete," the Supreme Court focused on the steps the regulator took to enforce the policy against the plaintiff himself. *Id*. ("For purposes of this appeal, it is undisputed that Uzuegbunam experienced a completed violation of his constitutional rights when respondents enforced their speech policies against him."). Here, by contrast, the only steps City officials took beyond passing the Ordinance were directed at others. So, if conduct directed against the plaintiff himself is all that counts, Prows's claimed injury, along with the resulting nominal damages, also falls short on redressability grounds.

Unfortunately, in *Uzuegbunam*, the Court left open the question perhaps most directly relevant here. There, another plaintiff, Bradford, claimed that the enforcement against Uzuegbunam caused him to discontinue engaging in similar First-Amendment-protected activity. The Court then declined to reach the issue of whether he had suffered a redressable injury as a result, remanding to the district court to assess standing in the first instance. *See id*. at 802 n. \*. That said, there the alleged conduct of the two arguably was more similar than here. But, given the Supreme Court's remand of the Bradford issue, this Court declines to rely on a lack of redressability to deny standing here.