**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

**TATE DAVID PROWS,**

    **Plaintiff,**

  v.

**CITY OF OXFORD,** *et al.***,**

    **Defendants.**

**Case No. 1:22-cv-693
JUDGE DOUGLAS R. COLE
Magistrate Judge Litkovitz**

**OPINION AND ORDER**

In the early days of the COVID-19 pandemic, the City of Oxford, Ohio restricted private gatherings in hopes of controlling the virus's spread. Tate Prows, a resident of Oxford, believed that Oxford's policy violated his rights, and the rights of others like him. Seventeen months after the policy expired, and despite admitting that City agents never enforced or threatened to enforce it against him, Prows sued. Proceeding pro se, he claims the City and its agents violated federal and state law. The Court ultimately dismissed his Amended Complaint (Doc. 7) for lack of standing. (Op., Doc. 54).

Prows has now mounted a multi-prong response. He first moves for the Court to take judicial notice of certain facts. (Doc. 56). Then, based on those additional facts and other arguments, he moves to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), or alternatively moves for relief from judgment under Federal Rule of Civil Procedure 60. (Doc. 57). Defendants responded (Doc. 58) and Prows replied (Doc. 59). Both the request for judicial notice and the motion asking the Court to revisit its previous judgment are now before the Court.

For the reasons discussed below, the Court **DENIES** both Prows's Motion for Judicial Notice (Doc. 56) and his Motion to Alter or Amend the Judgment (Doc. 57).

## BACKGROUND[1]

In August 2020, during the height of the COVID-19 pandemic, the Oxford City Council convened to implement restrictions on large gatherings within city limits. (Doc. 7, #131). During that meeting, the Oxford City Council adopted Ordinance 3579, which limited certain gatherings of 10 or more persons. (Doc. 1-2, #31). The Ordinance contained many exceptions, including exemptions for members of the media, as well as exceptions related to religious gatherings and gatherings related to First Amendment expressive purposes. (*Id.* at #31—32).

By its own terms, the Ordinance would remain in effect only "during the pendency of State of Ohio Executive Order 2020-01D." (*Id.* at #33). After the City enacted the Ordinance, local police began enforcing the restrictions with $500 fines. (Doc. 7, #145). Officers issued citations to twenty-three people (a group that did not include Prows) while the Ordinance was in effect. (*Id.*). But on June 18, 2021, Ohio Governor Mike DeWine rescinded Executive Order 2020-01D, thereby also ending Ordinance 3579. *See* Ohio Exec. Order No. 2021-08D.

Plaintiff Tate Prows lives in Oxford, Ohio. (Doc. 7, #128). On November 28, 2022, some seventeen months after the Ordinance was no longer in effect, Prows sued the City and its agents. (Doc. 1). In his Amended Complaint, Prows named the City

---

[1] A longer description of the allegations providing the factual background in this case is available in the Court's previous Opinion and Order. (Doc. 54, #574–78). The Court provides its standard caveat that they are still just allegations at this stage of the litigation.

of Oxford, along with the following city officials in their individual and official capacities: Mayor Michael Smith, Vice-Mayor William Snavely, Police Chief John Jones, City Manager Doug Elliot, and City Councilors David Prytherch, Edna Southard, Jason Bracken, Glenn Ellerbe, and Chantel Raghu. (Doc. 7, #124, 128–29).

Prows alleges that while Ordinance 3579 was in effect, it deterred him from gathering with his family during the 2020 Holiday Season. (*Id.* at #137). As noted, he did not allege that Oxford fined or arrested him for violating the Ordinance. Nor did he allege that City agents or officials directly threatened enforcement against him.[2] And Prows did not allege that, at the time he sued, he feared an imminent future injury—the standard means for a plaintiff to challenge a legal regime that has not yet been enforced against him. Nor could he—as noted, the Ordinance was no longer in effect and Prows has not alleged that Oxford plans to reinstate it.[3]

Instead, Prows asserted injury (and thus standing) based on what he chose not to do while the Ordinance was in effect. He said that YouTube videos depicting the City enforcing the Ordinance against college students at nearby Miami University caused him concern that the City likewise might enforce it against him. (Doc. 7, #134–

---

[2] In his Motion to Alter or Amend the Judgment, Prows seeks to dispute this by claiming that "as one of the people living in Oxford, Defendants did direct their threat of punishment towards Prows." (Doc. 57, #598). But that claim is based on enforcement efforts that were directed at other Oxford residents and generally publicized. He never alleges that the City specifically directed or threatened enforcement efforts against him.

[3] Prows also takes issue with this characterization and seeks to dispute it in his latest filings: "Prows most certainly does suggest that the City of Oxford policymakers could, and likely will, look to reimplement 'preventative measures,' which could include further peaceable assembly abridgment." (Doc. 57, #598). But his Amended Complaint contains no such allegations, and this generalized statement in his motion does not change the Court's view of his arguments.

3

35, 147–48). And based on that fear, he declined to have family gatherings over the holidays. (*Id.* at #135, 137). He also contends the mere existence of the Ordinance provides him standing to sue based on his claim that the Ordinance violated his rights and the rights of his neighbors. (Doc. 57, #605–06).

Defendants answered (Doc. 13), which Prows moved to strike (Doc. 19). Defendants then also moved for judgment on the pleadings (Doc. 20). In that motion, Defendants argued Prows lacked standing to pursue his claims and had not plausibly alleged sufficient facts to state a claim for relief. (*Id.* at #277–78). Prows responded to Defendants' motion in three ways. First, he moved to convert Defendants' Rule 12(c) motion into a motion for summary judgment. (Doc. 27). Second, Prows responded on the merits. (Doc. 33). Finally, Prows moved (twice) for leave to amend his Complaint. (Docs. 34, 38). But he then moved to withdraw both the second motion to amend and the motion to strike. (Mot. to Withdraw, Doc. 43).

The Court referred the matter to the Magistrate Judge. (*See* Doc. 46). She began by granting Prows's Motion to Withdraw. (*See* Doc. 47). She then issued an Order and Report and Recommendation (R&R, Doc. 49). There, the Magistrate Judge concluded that Prows had standing. (*Id.* at #485–86). But she (1) denied Prows's Motion to Convert Rule 12(c) Motion into a Motion for Summary Judgment, and then (2) recommended that the Court grant Defendants' Motion for Judgment on the Pleadings. (*Id.* at #506). The Magistrate Judge also notified the parties that they had fourteen days to object. (*Id.* at #507–08). Prows did so, but only as to the

4

recommendation that the Court should grant Defendants' Motion for Judgment on the Pleadings. (Doc. 50).

At Prows's request, the Court heard argument on his objections to the R&R. (Min. Entry 08/07/23). During the argument, the Court inquired further into Prows's alleged injuries. Prows explained that he viewed his injury-in-fact required for standing as the "chilling" effect the Ordinance had on his First Amendment rights. Elsewhere in his papers, though, he raised the possibility that his injury was the emotional harm he suffered in not gathering with his family while the Ordinance was in effect—in other words, the emotional injury that he says resulted from the chilling. (Doc. 33, #366–68).

On August 24, 2023, the Court dismissed Prows's Amended Complaint without prejudice for lack of standing and denied all other motions as moot. (Doc. 54, #588). The Court determined that Prows had not alleged a traditional injury (*id.* at #579–80) and had not shown either "chilling" or "emotional trauma and anxiety" injuries sufficient to support standing (*id.* at #580). His chilling argument fell short because (1) the policy was no longer in effect by the time Prows sued, which meant he could not rely on the typical chilling-as-a-basis-for-a-pre-enforcement-challenge argument (*id.* at # 580–81); and (2) the "past chilling" he suffered was not an objectively reasonable chill that might support standing, *see Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602, 608–10 (6th Cir. 2008), as it did not arise from enforcement activities directed at him. (Doc. 54, #582–84). The emotional injury argument, meanwhile, failed because although emotional injury can constitute an injury for

5

standing purposes, that is typically the case only where that injury results from conduct directed at the plaintiff himself. (*Id.* at #584–87). Here, by contrast, the "emotional injury" that Prows suffered based on his past fear of enforcement was not particularized to him, but rather was the same emotional injury that all Oxford residents would have experienced based on their generalized concerns about potential enforcement of the Ordinance. (*Id.* at #586–87). Accordingly, Prows could not satisfy Article III's standing requirements.

As previewed above, Prows has now responded in two ways. First, he moved for judicial notice of certain facts. (Doc. 56). He specifically wants the Court to take notice of nine facts. The first eight facts consist of legal citations, statements about dictionary definitions, a description of one of Prows's arguments, a characterization of Magistrate Judge Litkovitz's decision in another case, and a statement the Court made to Prows during oral arguments. (*Id.* at #590–91). The ninth fact Prows wants the Court to recognize purports to be the (allegedly) logical conclusion that he claims follows from the first eight facts: "According to the transitive law of mathematics and logic, Magistrate Judges, and Article III Judges, within the Southern District of Ohio Western Division Federal Court, equate the people's rights with that of Pablo Escobar's hippos." (*Id.* at #591).

Separately, Prows moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) and sought relief from the judgment under Federal Rule of Civil Procedure 60. (Doc. 57). In the Motion to Alter or Amend Judgment, he argues that the Court's previous Opinion and Order was "based on errors of law and fact,"

6

and that "[a] corrected understanding of the applicable law yields to [sic] the conclusion that Prows must have standing and that his case be able to move forward." (*Id.* at #594). Basically, he argues that the Court misinterpreted various cases. (*Id.* at #598–606). According to Prows, (1) "the instant case has just as much to do with … prior restraint as the chilling effect," (*id.* at #599–600), (2) he showed a chill sufficient to support standing, (*id.* at #600–05), (3) he showed an injury in fact based on emotional distress and "physical symptomologies," (*id.* at #605–06), and (4) the Court's previous Opinion "completely ignores the 14th Amendment claim in Prows' amended complaint as well as the ultra vires character of 3579," (*id.* at #606).

Defendants responded to both of Prows's motions on September 18, 2023. (Doc. 58). As to the Motion for Judicial Notice, they claim it is untimely and seeks to have the Court take notice of "legal conclusions and/or statements of opinion that are [neither] appropriate for judicial notice" nor relevant to the pertinent legal issues. (*Id.* at #608–09). They characterize the Motion to Alter or Amend the Judgment, on the other hand, as "merely [an improper] attempt[] to relitigate the same arguments and issues he has already presented to the Court numerous times." (*Id.* at #610). Finally, they argue that Prows's "passing reference to Rule 60" is perfunctory and the Court should consider that argument "waived" (*id.* at #610–11), although perhaps "forfeited" is technically the more accurate term.

Prows replied. (Doc. 59). The only thing worth noting from his reply is his further clarification regarding his request for relief under Rule 60: "[i]f Prows must

7

specifically illustrate which provision of Rule 60 that he moves under, then clearly this would be 60(b)(1) and/or 60(b)(6)." (*Id.*).

The matters are now ripe.

## LAW AND ANALYSIS

The Court begins with the Motion for Judicial Notice, then turns to the Motion to Alter or Amend Judgment. Neither is persuasive.

**A.     The Motion for Judicial Notice**

Start with Prows's Motion for Judicial Notice. "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Rule 201 also provides that the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). But the Court need not recognize irrelevant facts, even when a party has requested judicial notice. *Cece v. Wayne Cnty.*, 758 F. App'x 418, 424–25 (6th Cir. 2018); *United States v. Houston*, 110 F. App'x 536, 545 (6th Cir. 2004) (Haynes, J., dissenting) ("For a court to take judicial notice of a fact, that fact must be relevant to the ultimate issue that the jury must decide."). And Rule 201 does not require courts to "take judicial notice of a fact at the eleventh hour, after the close of proofs." *Jones v. Prudential Sec., Inc.*, 534 F. Supp. 3d 839, 842 (E.D. Mich. 2021).

The Court denies Prows's Motion for Judicial Notice for three reasons. First, the Motion is untimely. He filed it after the Court had issued a final order in the form

8

of its previous Order and Opinion—"after the close of proofs." *Id.* That is sufficient, in and of itself, to warrant denial.

Second, several of the "facts" Prows wants this Court to recognize are not proper for judicial recognition. "Fact" 9 is an opinion or—at best—a legal conclusion. (Doc. 56, #591 ("According to the transitive law of mathematics and logic, Magistrate Judges, and Article III Judges, within the Southern District of Ohio Western Division Federal Court, equate the people's rights with that of Pablo Escobar's hippos.")). "Facts" 3–6, meanwhile, are broad descriptions of dictionary definitions that are subject to reasonable dispute. (*E.g.*, *id.* at #590–91 ("According to the English language and most every dictionary and thesaurus, the words limit and abridge are synonymous." (emphases removed))). Neither category is proper for recognition under Rule 201.

Third, Prows fails to explain why any of the facts he seeks to have this Court recognize are relevant. And the Court can see no reason why they might be relevant to the merits of the pertinent legal issues here. So the Motion for Judicial Notice is also denied on relevance grounds.

In short, Prows's Motion for Judicial Notice is not timely and seeks recognition of various "facts," some of which are not facts, some of which are subject to reasonable dispute, and none of which are relevant. Accordingly, the Court denies the Motion (Doc. 57).

B.     **The Motion to Alter or Amend Judgment**

Next, the Court considers Prows's Motion to Alter or Amend the Judgment. The Motion relies on two Rules of Civil Procedure: 59(e) and 60(b). Rule 59(e) allows a party to move to alter or amend a judgment within 28 days after a court enters it. And Rule 60(b) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for [six enumerated] … reasons." In his Reply, Prows specifically cites Rule 60(b)(1) and (b)(6) as the bases for his request for relief from judgment. (Doc. 59, #612). Those provisions, respectively, allow relief for "mistake, inadvertence, surprise, or excusable neglect" and "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6).

Courts interpret Rules 59(e) and Rule 60(b) narrowly. "Only three situations justify altering or amending a judgment under Rule 59(e): (1) newly discovered evidence; (2) intervening change in controlling law; or (3) need to correct clear legal error to prevent manifest injustice." *Bollenbacher v. Comm'r of Soc. Sec.,* 621 F. Supp. 2d 497, 501 (N.D. Ohio 2008) (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). Similarly, "[a] Rule 60(b) motion is neither a substitute for, nor a supplement to, an appeal." *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 373 (6th Cir. 2007) (collecting cases). "And the public policy favoring finality of judgments limits the availability of relief under the rule." *Id.* at 372 (cleaned up); *id.* ("[S]ubsection 6 … applies only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." (cleaned up)). In short, "it is well-established in the Sixth Circuit that a Rule 59(e) and Rule 60(b)

10

motion … does not allow the unhappy litigant to reargue the case." *Hines v. Subodh Chandra*, No. 1:06-cv-2233, 2009 WL 3875238, at *1 (N.D. Ohio Nov. 18, 2009) (cleaned up) (collecting cases).

Here, Prows is attempting to do just that. He does not point to newly discovered evidence or changes in the law. His sole claim is that the Court erred in its previous judgment. But his arguments on that front reiterate the issues, cases, and reasoning contained in his previous filings, which the Court already considered in reaching its previous judgment. *See id.* at *2 ("The Court … cannot conclude that there is a need to correct 'clear legal error' [under Rule 59(e)] given that [the movant] has not advanced new arguments."). And he has shown no extraordinary circumstances that justify applying Rule 60(b)(6). So the Court declines Prows's invitation to reconsider the same arguments. Prows may be correct that the Court erred. But his remedy for any such error lies in appeal, not further attempts to litigate here. *Cf. Dupree v. Younger*, 598 U.S. 729, 737 (2023) (explaining that a party need not re-raise a purely legal question resolved at the summary judgment stage in a post-trial motion to preserve the issue for appellate review because "a repeat-motion requirement for legal questions typically amount[s] to … the tedium of [district courts'] saying no twice," and "[t]here is no reason to force litigants and district courts to undertake that empty exercise"). Accordingly, the Court denies the Motion to Alter or Amend the Judgment (Doc. 57).

11

## CONCLUSION

For the above reasons, the Court **DENIES** Prows's Motion for Judicial Notice (Doc. 56) and his Motion to Alter or Amend the Judgment (Doc. 57).

**SO ORDERED.**

November 8, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**